IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANDON ARTHUR RAMSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 23-1781 |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| ) | |
| Defendant ) | |

**O R D E R**

AND NOW, this 24th day of February, 2025, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on April 1, 2024,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10) filed in the above-captioned matter on February 8, 2024,

IT IS HEREBY ORDERED that said Motion is GRANTED. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.     Background**

Plaintiff Landon Arthur Ramsey protectively filed claims for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401, 1381 *et seq.*, alleging he became disabled on August 6, 2019. (R.

1

10).  After being denied initially on July 6, 2020, and upon reconsideration on February 12, 2021, Plaintiff sought a hearing before an Administrative Law Judge ("ALJ") on March 1, 2021.  (R. 10, 137-177).  After a hearing was held on September 14, 2022, in Pittsburgh, Pennsylvania, ALJ Leslie Perry-Dowdell denied Plaintiff's request for benefits in an unfavorable decision dated October 13, 2022.  (R. 10-20).  On August 22, 2023, the Appeals Council declined to review the ALJ's decision.  (R. 1-6).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.  (Doc. Nos. 10, 15).

## II.     Standard of Review

The Court's scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) ("'[t]he findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence*, shall be conclusive[]'") (quoting 42 U.S.C. § 405(g)) (emphasis in original); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (citations omitted) ("[w]e have plenary review of all legal issues . . . and review the ALJ's findings of fact to determine whether they are supported by substantial evidence.").  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  If the Court finds the Commissioner's findings of fact are supported by substantial evidence, then it must uphold the Commissioner's final decision.  *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Additionally, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason[.]" *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

"[A] disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting *Plummer*, 186 F.3d at 427) (internal quotations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The ALJ's disability determination is based on a five-step sequential evaluation process promulgated by the Social Security Administration. 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful

3

activity. *See id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the ALJ moves on to the second step of the process, which is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at §§ 404.1522, 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

At Step Four, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ must consider all the evidence in the record in formulating the RFC. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The claimant bears the burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order

to deny a claim of disability. *See id.* at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at §§ 404.1523, 416.923.

### III.    The ALJ's Decision

In her October 13, 2022 decision, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, August 6, 2019. (R. 12). The ALJ further found that Plaintiff had several severe impairments: major depressive disorder, bipolar disorder, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), and obesity. (R. 12). In support of her Step Two conclusions, the ALJ stated only the following:

> The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

(R. 12). At Step Three, the ALJ concluded that none of Plaintiff's impairments or combination of impairments met any of the Listings. (R. 13). The ALJ evaluated Plaintiff's obesity pursuant to Social Security Ruling ("SSR") 19-2p and Plaintiff's mental impairments under Listings 12.04 and 12.06. (R. 13-14). Other than two cursory references in the decision, the ALJ did not mention or analyze Plaintiff's migraine headaches despite the record showing that Plaintiff reported he had headaches several times a week for more than two years during the relevant time period. (*See* Exs. B6F/3 (showing Plaintiff was diagnosed with migraine with aura and migraine-related dizziness and seen again for migraines in October 2020), B9F/42, B13F/17-18, 22, 53-54 (showing Plaintiff was still experiencing migraines as of June 2021 and May and June 2022)).

At the next step of the process, the ALJ found that Plaintiff retained the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to understand, remember, and carry out simple instructions, and perform simple, routine tasks and make simple work-related decisions. He requires a low stress environment defined as no production rate pace work, but rather goal-oriented work with occasional and routine changes in the work setting. Routine change is that which does not require alteration in work method. The claimant cannot be exposed to moving, mechanical parts. He can have no work-related interaction with the public and can have only occasional interaction with co-workers and supervisors. He should avoid exposure to vibration, and unprotected heights, and he requires a moderate noise intensity level as defined in the DOT.

(R. 14). Applying this RFC, the ALJ proceeded to determine that there are jobs existing in significant numbers within the national economy that Plaintiff can perform, such as garment bagger, inserter of paper goods, and table assembler of paper goods. (R. 19). Accordingly, the ALJ found Plaintiff was not disabled. (R. 19-20).

**IV.     Legal Analysis**

Plaintiff sets forth several arguments as to why the ALJ's finding of not disabled is not supported by substantial evidence. (Doc. No. 11). First, Plaintiff argues that the ALJ overlooked his migraine headaches and erred by failing to evaluate them as a severe impairment at Step Two of the sequential process. (*Id.* at 10-12). Similarly, Plaintiff posits that the ALJ erred in not analyzing his migraine headaches under Listing 11.02 at Step Three. (*Id.*). Next, Plaintiff contends that the ALJ failed to properly analyze the consistency and supportability of the joint opinion of Dr. Elizabeth Kistler, M.D., and Rachel Noderer, M.E.Ed, LPC. (*Id.* at 12-17). Plaintiff also asserts that the ALJ placed too much focus on normal exam findings and ignored numerous abnormal findings. (*Id.* at 15-17). Lastly, Plaintiff argues that the ALJ failed to account for his medication side effects and time off work for medical appointments when crafting his RFC. (*Id.* at 17-21).

The Court finds merit in Plaintiff's second argument, pertaining to the ALJ's failure to analyze his migraine headache disorder under Listing 11.02. The record reveals that the ALJ did not discuss Plaintiff's migraine headaches other than to state that Plaintiff alleged he cannot work because he experiences headaches, among other impairments, and that Plaintiff had been having headaches two to three times per-week in July 2020. (R. 15, 16). While the ALJ is not required to analyze any particular Listing, the ALJ's review of the record must permit meaningful review of the Step Three conclusions. *Lopez v. Comm'r of Soc. Sec.*, 270 Fed. Appx. 119, 121 (3d Cir. 2008) (citation omitted). Here, the ALJ's failure to address Plaintiff's migraine headaches adequately within her decision prevents the Court from being able to discern whether this impairment was fully considered. Without such explanation, the Court is not able to meaningfully review this decision and, accordingly, cannot find the ALJ's decision to be supported by substantial evidence. As a result, remand is necessary for further consideration and discussion of this issue.

As mentioned, while an ALJ is not required to address a specific Listing at Step Three, this is only the case "so long as the ALJ's review of the record permits meaningful review of the step-three conclusions." *Id.* Indeed, an ALJ's failure to consider a particular Listing is not, alone, reversible error where the court can "discern the particular listed impairments considered based on the ALJ's discussion of the relevant evidence[.]" *Arroyo v. Comm'r of Soc. Sec.*, 155 Fed. Appx. 605, 608 (3d Cir. 2005). However, in this matter, the Court cannot discern whether the ALJ considered Plaintiff's migraine headaches in a meaningful way. While the ALJ explained much of the record throughout her decision, she overlooked a thorough discussion of Plaintiff's migraine headaches. Her decision shows that she merely acknowledged Plaintiff's testimony that he cannot work because he has headaches, among other impairments, and noted

7

that Plaintiff's treatment records showed he had headaches several times a week. (R. 15, 16). The ALJ did not acknowledge the details of Plaintiff's migraine impairment, including records showing Plaintiff reported headaches from 2020 to 2022, that Plaintiff was diagnosed with migraines and headaches from medication overuse, that he was prescribed several medications for headaches, and that, despite adherence to medication, he still had migraines several times per-week. (*See, e.g.*, Exs. B2F/10-14; B6F/6). This evidence demonstrating the fact that Plaintiff's migraines persisted despite adherence to medication demanded that the ALJ address this impairment and consider Listing 11.02. *See Boerger v. Berryhill*, No. 2:16-1095, 2017 WL 2780584, at *4 (W.D. Pa. June 27, 2017) (noting that while the evidence did not require a finding that Plaintiff's headache impairment equaled a listing, "the ALJ's failure to discuss Plaintiff's alleged headache symptoms in the context of the listings precludes meaningful judicial review of this issue and requires remand.").

    SSR 19-4p explains that Listing 11.02 is the "most closely analogous listed impairment" for a primary headache disorder, stating, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)," which may result in a finding that the claimant's primary headache disorder "medically equals the listing." SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). Listing 11.02B describes dyscognitive seizures as those "occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R. Part 404, Subpart P, App. 1, § 11.02B (internal citations omitted). Listing 11.02D requires seizures "occurring at least once every 2 weeks for at least 3 consecutive months . . . despite adherence to prescribed treatment," along with "a marked limitation in one of the following[:]"

8

1. Physical functioning; or

2. Understanding, remembering, or applying information; or

3. Interacting with others; or

4. Concentrating, persisting, or maintaining pace; or

5. Adapting or managing oneself.

20 C.F.R. Part 404, Subpart P, App. 1, § 11.02D (internal citations omitted).

Here, the record shows that Plaintiff first reported that he had headaches two to three times per-week in July 2020. (Ex. B2F/10). There is some evidence that he experienced migraines prior to this, as a medical source that evaluated Plaintiff noted that he experienced headaches for several years and that he was first diagnosed with migraines with aura more than three years prior to October 2020. (Ex. B6F/3) (stating "he reports that he has had headaches for several years and in fact saw me >3 years ago, at which time I diagnosed him with migraine with aura and migraine-related dizziness"). He was prescribed several medications to address his condition and underwent several medication trials combined with natural measures to alleviate these headaches. (*See, e.g.*, Exs. B2F/11-12; B6F/3-6, 14-15). Plaintiff reported that certain medications helped his migraines, but also made him drowsy and that he experienced an average of 25 headaches per-month, with 8 of those headaches being migraines. (Ex. B2F/14; B6F/14). Plaintiff continued to report that he suffered from migraines until at least June 2022. (Ex. B13F/17-18). This evidence would satisfy the frequency requirement of Listing 11.02 as it shows Plaintiff was diagnosed with migraine with aura and migraine-related dizziness before October 2020 and was still experiencing migraines until June 2022. Accordingly, Plaintiff potentially satisfied at least the frequency requirement of Listing 11.02B and D and further

evaluation was needed to determine if he satisfied the marked limitation requirement of Listing 11.02D.  20 C.F.R. Part 404, Subpart P, App. 1, § 11.02B, D.

It is possible that the ALJ overlooked Plaintiff's migraine headaches because she mistakenly understood that they did not occur independently from other impairments or because Plaintiff did not allege headaches or migraines as an impairment preventing him from working on his initial Disability Report.[1]  (Ex. B2E/2).  SSR 19-4p makes clear that primary headache disorders are those that "occur independently and are not caused by another medical condition."  SSR 19-4p, at *3.  While there is evidence within the record that Plaintiff experienced headaches because of medication overuse, there is also some evidence that he experienced migraines independently.  (Ex. B6F/6 (noting Plaintiff suffered from medication overuse headaches from overuse of Naproxen); *see, e.g.*, Ex. B2F/10 (noting Plaintiff had a diagnosis of "other migraine without status migrainosus, not intractable")).  Further, Plaintiff's failure to allege this impairment in his application does not excuse the ALJ from addressing it in her decision, as the ALJ should consider impairments about which evidence has presented and not only those that claimant asserts.  *See, e.g.*, *Robinson v. Astrue*, 667 F. Supp. 2d 834, 841 n.7 (N.D. Ill. 2009) (noting "an ALJ is required to consider not only those impairments asserted by claimant, but also those about which the ALJ has received evidence.").  It is also feasible that the ALJ thought Plaintiff's migraines were irrelevant to his claims because they occurred outside the relevant time frame for a Title II claim.[2]  However, Plaintiff also filed a Title XVI claim, and the fact that

---

[1]  He did, however, note that he experienced migraines about twice per month on his Disability Report Appeal form.  (Ex. B7E/2).

[2]  The Court notes that the record evidence of Plaintiff's migraines may not support a finding in his favor as to his Title II claim.  *See* 20 C.F.R. § 404.131(a); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008) (noting the relevant time period for a claim under Title II is from the alleged onset date until the date last insured).

the Court must guess as to why this evidence was not acknowledged or considered is precisely why this case must be remanded.

Additionally, the Court notes that an ALJ's decision need not be so comprehensive as to account with meticulous specificity for each finding contained therein. Likewise, the Court does not fault the ALJ for failing to discuss every piece of evidence evidencing Plaintiff's headaches and migraines in the record. *See Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citation omitted). However, the Court is unable to review the ALJ's findings where it cannot discern whether certain evidence was ignored or overlooked. *See Fargnoli*, 247 F.3d at 44 n.7 ("[T]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (citations omitted)). Although the evidence presented does not require a finding that Plaintiff's migraines and headaches medically equaled Listing 11.02, the ALJ's failure to discuss Plaintiff's alleged headache symptoms in the context of the listings precludes meaningful judicial review of the issue. Therefore, the Court will remand the matter so that the ALJ can explain how she evaluated Plaintiff's migraine headaches.

Although Plaintiff raises other arguments, the Court does not reach these because it has already found a remand warranted. The Court, however, does note that on remand the ALJ should take care to properly consider Plaintiff's headache disorder as a severe impairment at Step Two, incorporate all credibly established impairments into the RFC, and properly analyze the joint opinion of Dr. Kistler and Ms. Norderer.

**V.	Conclusion**

In sum, the record does not permit the Court to determine whether the ALJ's Step Three findings are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration with this Order.

s/Mark R. Hornak, J.
Chief United States District Judge

ecf:	Counsel of record